Good morning. I'm Paul Eaglin of Fairbanks, Alaska on behalf of William Ludwig. Good morning. Thank you for hearing my client's appeal. As you know, this is the matter in which an FBI agent, at the conclusion of a day of hearings in Fairbanks, approached the administrative law judge who had heard the cases that day to report information that he had observed about my client, William Ludwig. And so, of course, we fully briefed that. What I'd like to go to immediately, if possible, is to try to discuss some of the matter about the harmless error because some of that was apparently pointed back at me as if there were steps that I could have taken, and my response is that I believe that there were steps that could have been taken immediately. Counsel, let me ask you a different question about harmless error. I read the record, and it looked to me as though an ALJ could go either way on Ludwig, and there was plenty of support in the record for going the way the ALJ did. It looked as though it would be kind of an open-and-shut case against Ludwig on appeal, considering the deference we have to give to the judgments of the ALJ. Assuming that there was an error and that it was a constitutional error, a denial of due process, not to let you have a resumption of the hearing with cross-examination of the FBI agent, assuming that, I'm still having trouble seeing how the error was harmful, and with that Shineski case or Shinseki, it seems like you don't get anywhere if it's a harmless error. Your Honor, I believe that it was harmless for the reasons that I mentioned in the brief, which is that... Immediately, it was harmful, not harmless. Thank you. That's correct. We know your position. Thanks. Thank you.  ...which is that what happened here strikes at the heart of our burden of proof. Sure. It's due process error. Because it affects credibility. It's important. But still, if you look at the record and you say, without the FBI agent, the ALJ clearly would have done exactly the same thing. Because I don't know that, Judge Kleinfeld. I don't know what happened between those two. Well, you sort of do. He said he didn't give significant weight to the FBI agent. I don't agree that I know what happened. I know what he says. But you have to look at it how we have to look at what he said. He said he didn't give significant weight. So we don't have to entirely get into his head and imagine what he thought. He said, I didn't give significant weight. But I'm also a little concerned over that the ALJ didn't ask the officer to go out there. What the ALJ did when it was reported what I thought was appropriate in notified the parties that there had been an ex-party communication. And as incredible as it seems, people do approach judges and tell them things when they should know better, but they don't. And notified everyone what had happened. Gave you an opportunity to say what the problem was or whatever. But it seems to me on some level that you decided to sit on your hands rather than say how that could be harmful or what you could show, how you could impeach the person or why that way. It just said you went all or nothing and made it said it's got to be structural error. I'm entitled to a hearing even if the hearing wouldn't have done any good. And I can't tell you how a hearing would have made a difference. And so you sort of went for it all and you win or lose on that. But Judge Callahan, I can't tell you any of the responses to that because I never got to question Derek Stone about what he observed or what was the interaction between those two in terms of the first point that you made, which is that you're supposed to observe this in a certain way. Well, yes, I understand that. Why didn't you contact him? Why didn't I contact Derek Stone? Yes. Because his actions made clear to me that he was avoiding me. He waited until I was gone. Mr. Ludwig left that day. I had another hearing. If he had concerns that he wanted to report to the ALJ, he could have come back immediately. If he had come back immediately, I would have been there. So how were you going to impeach him? Sorry? How were you going to impeach him? You could have said I want to call my client back in and my client is going to say he was limping out there. I could have called back my client to respond to what Agent Stone said once I heard what Agent Stone said. But I never heard what Agent Stone said. I have only the ALJ's representation, which was dictated to his assistant, William Scafflestad, as we can see from the letter. He was still in Fairbanks at the time. The letter that he sent to me by mail was called in by the ALJ to his assistant, William Scafflestad. It's dated the next day. He was still in Fairbanks. Now, to get back to some of the other points that you made, and this brings me back to where I wanted to go from the outset, which is that there seems to be this tendency, which I regard as unfair, probably understandably so, of directing some of this at me. I think it should not be. Here's why. One, I've already mentioned. Well, if the ALJ had said I gave no weight whatsoever, then do you lose? I do not believe. . . No, I do not believe I lose. I think that my position would be I would have some of the same concerns, depending on what the rest of the decision said. But I suspect this decision because of the fact of what happened, and I can't counter any of it. I can't put any evidence in front of you for you to evaluate. Obviously, you're correct that you have a certain review function. I respect that, but I would like to be able to put something in front of you to contest that, and I can't. Why? Because the ALJ didn't call me immediately. The FBI agent didn't come back immediately and report it. Had he done so, I would have been there, and we could have dealt with it right then on the spot. My office is 10 blocks from the federal courthouse in Fairbanks. If he had called me, I could have walked over there in about 10 or 15 minutes, if I had my car, even sooner, and we could have dealt with that on the spot. Instead, he takes what I regard as a rather dilatory procedure of producing a letter dated the next day that's dictated to his assistant in Seattle, who mails it to me so it arrives the next week in Fairbanks, instead of calling me right away to get back over to the federal building in Fairbanks, 10 blocks away, and let's deal with this right on the spot. That's how I could have met Derek Stone, to get back to the point. Rather than this invitation to call him to see if he would receive me at his office, when I read that, I said, of course he's not going to receive me. Why should he? He was avoiding me the entire day. That was the whole point of the surreptitious surveillance. So what's your offer of proof how you could change all this? I'm sorry? What's your offer of proof at this point in time as to how a hearing would change all this? I don't have one because I don't know what he said, and I don't know of the interaction between the agent. It may be much more than what this ALJ led on in what he dictated to his assistant. I don't know that. Let's assume that it was exactly what the ALJ says. I mean, it's kind of a dead courthouse. Not much is happening most of the time, and some guy's walking across the parking lot. Everybody knows everybody's business and who he is. Let's say that exactly what the ALJ said happened. The FBI agent said to the ALJ, hey, I saw that guy. I heard that when the law enforcement people are all having coffee in the morning that he was coming before you for a hearing, and I noticed he wimped in the courthouse and he walked fine in the parking lot. Let's say that's what happened. What would have ensued had you been granted the hearing? That I would have questioned him about all of the circumstances, about what happened in terms of why he was observing him, what brought his attention to him, what else he observed during the day, the usual types of things that one does when one encounters an adverse witness like that. First of all, remember, there are no adverse witnesses in Social Security hearings. This is the first adversarial Social Security hearing I've ever encountered. May I reserve one minute? Often the witness gives you the wrong answers. It was clear daylight, I knew who he was, I was watching him because there was nothing else going on, I was kind of curious. And then I would be able to counter him possibly with my client's testimony depending on what he had to say. May I reserve one minute for rebuttal? Thank you. Thank you. Good morning. Good morning. Jordan Goddard, appearing for the Commissioner of Social Security. Counsel, I'm troubled because on the one hand, as you could tell from my questions, it was hard to see what difference the procedural problem made. On the other hand, it just isn't right that a judge gets an ex parte communication of high credibility, comes from an FBI agent, and he doesn't say, I give no weight to it. So he's giving at least some weight to it, even if it's not significant. And the lawyer on the other side never gets to have a hearing or cross-examine. There was some kind of nonsense, well, you didn't send written interrogatories. You don't have a right to send written interrogatories and get answers to them. Is the law that ex parte contacts, even if they violate due process, should be ignored even if the ALJ gave some weight to what was heard? Well, if they violate due process, then certainly not. How could this not violate due process? If I'm doing a judge-tried criminal case when I was district judge, and one of the marshals or one of the police comes into chambers during one of the recesses and tells me what he heard one person saying to another in the parking lot, how could it not violate due process if I listen to it and give some weight to it? In the circumstance you described, that would be a violation of due process. You're in an adversarial proceeding. Now, Mr. Ludwig's counsel has described this as an adversarial proceeding, but in fact these proceedings are not. They are what is known as an inquisitorial proceeding. Well, the reason it's inquisitorial is that the ALJ isn't a neutral arbiter. He's supposed to be trying to help the potentially disabled person because a lot of them are disabled and need help. Certainly that is one way to articulate his duty. I think another way to say it is the way the Supreme Court has articulated his duty. Certainly that is one element of the duty to develop the record, which is the ultimate duty that the ALJ has. In fact, I think if you look at the substance of the decision, what we see is that the ALJ did exactly that. Let's sort of get the scale here. You're saying it's not a due process violation. What if the ALJ's decision had said, what tipped the scales for me was what the FBI agent said? Would that be a problem for you? I would say it would be more likely to be a problem, but it is not a per se problem. I think it's important. I'm having a hard time with counsel for the appellant says, if the ALJ says, I absolutely didn't consider it, he says, oh, I still have the same position with this court, and you're saying if the ALJ said, that's what made up my mind, it's not, you know, I don't think both of you can be right on that point here. I mean, we have something in between here. So it's, you know, rather than, you know, I think you can concede a problem without losing your position power if the ALJ said, that's what made up my mind, not what I heard when everyone was present. The officers, that's what made up my mind. Now, wouldn't, I mean, that's basing your decision on something that no one else heard, saw, anything. I would say under those circumstances, it would be very reasonable for this court to conclude that the ALJ did not provide adequate notice and opportunity to respond. So we can give some weight to what the ALJ said, even though appellant's counsel said, I shouldn't, if the ALJ had said, I didn't even consider it, I can't, I shouldn't believe that. And now you've conceded, I guess, that if the ALJ said, that's what tipped the scale, that's what made up my mind, you're saying that might be a problem. We're in between here. Yes, Your Honor, that is what I'm saying, that that might be a problem. The standard that we have in an inquisitorial administrative proceeding like this is notice and adequate opportunity to respond. And under the circumstances you just described, there may be a need for the administrative law judge to give a greater opportunity for response. What about this regulation at 20 CFR 404.916F? It says, if for any reason, and that would include the innocent reason from the ALJ's point of view and government counsel's point of view, if for any reason additional evidence is obtained, well, it was obtained, the FBI agent was an eyewitness to the man not having his limp, faking his limp, or developed by us after your disability hearing, well, it was after the hearing, you will be given ten days from the date you receive our notice to submit your comments. Your comments will be considered before a reconsidered determination is issued. If you believe that it is necessary to have further opportunity for hearing with respect to any additional or with respect to the additional evidence, a supplementary hearing may be scheduled at your request. The request was made. And did the ALJ give an explanation of his decision not to grant the hearing? Not directly, no. So he exercised discretion, but he didn't say why. Well, Your Honor, I'm not What I'm thinking is the most likely explanation would be he's an out-of-town guy, he's looking at his plane ticket as the afternoon comes to a close, gets on the plane and goes out, and flying all the way back to Fairbanks, Alaska, looks like more trouble than it's worth. That seems to me a reasonably likely explanation of why he didn't grant a hearing. And if he didn't explain why he didn't grant a hearing in some other terms, I'm wondering if I shouldn't just figure that's as likely as anything. Well, first of all, Your Honor, I think that if you look at the request that Mr. Ludwig's counsel submitted, it was a conditional request. And I think it's fair to read the ALJ's decision when read in context as treating this evidence as insignificant. I thought he said if you're going to give it any weight at all, I want a hearing. Yes, he did. Well, the ALJ was going to give it at least some weight rather than no weight,  If the court chooses to interpret it that way, that is certainly an issue. I do, though, emphasize that while the ALJ's articulation saying that he's not giving significant weight to this evidence was inartful, if you look at the paragraph or look at that sentence within the context of that paragraph, that paragraph starts off with the ALJ discrediting the FBI agent's observations. He gives two reasons. Let's look at it together. Absolutely, Your Honor. What page is it again? That would be excerpts of Record 26. Got it. It starts off, The FBI agent was not familiar with the claimant's medical history and observed the claimant only briefly. I don't see where that discredits him. It adds to his credibility, if anything. He's just a clean witness, no preconceptions. Well, I would note that that's actually the reasoning that Mr. Ludwig's counsel provided in the letter, towards the end of his letter that he sent to the ALJ, as one of the reasons for discrediting this FBI agent, that he was not familiar with the claimant's medical history and did not know how to put this into context. The ALJ, I think, added another reason, which is he observed him only briefly. Our regulations note that that is one of the factors in evaluating any kind of evidence in the record, whether it be from a doctor or a lay witness. So he cited one of the reasons specifically that Mr. Ludwig's counsel gave for why this should not be given weight. That he wasn't familiar with the medical history. And second of all, there's this just very brief encounter. And so when you put the next sentence, I do not assign significant weight to the information provided for these reasons. The ALJ has discredited this FBI agent. The sentence after that, however, the record contains other evidence showing the claimant has exaggerated symptoms. So I read that to mean the first evidence that the claimant's exaggerating is the FBI agent's observation. That's not that great, but there's other evidence of the same thing. Well, I think a fair way to read that is that the observation is consistent with this other evidence. That's how I read it. Okay. Well, then to go back to the regulation you specifically cited, I would simply point out that it uses the word may, which means that there is some discretion on the administrative law judge's part. And I think the administrative law judge exercised that discretion here. As we can see from the record as a whole, there are many other reasons that were given by the administrative law judge to reach the conclusion that he did, notably inconsistencies between Mr. Ludwig's statements at the hearing as compared to his doctor's notes. Additional questions? I'm going to ask you to wrap up. You're moved into overtime. I apologize if there's no more. All right. Thank you. Any additional questions from the panel? There do not appear to be. Thank you for your argument. Thank you. All right. You have 46 seconds left. Your Honor, I do not know whether Derek Stone, the FBI agent, knew anything about my client's medical record, and I don't believe that my letter gives that impression. I think it was asking the ALJ, is that, does he have any of that? That was one of the things that I would have asked about had I had the opportunity in a supplemental hearing to cross-examine him. Another thing, very quickly, is a supplemental hearing would not have required the FBI, or rather the ALJ, to come back from Seattle. Very often they're done just by phone. They can be done rather informally. In fact, I've done full hearings by phone a couple of years ago when the weather did not permit the ALJ to get into Anchorage and so he just conducted them by phone from Seattle. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: B Fletcher, Kleinfeld, Callahan, Cjj